Howard **ENGLE, M.D. Robert W. Angell, Raymond Lacey, Frozene D. Steevens, Frank Amodeo, Mary Farnan, Loren E. Lowery, Angie Della Vecchia and Michael Matyi, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**R.J. REYNOLDS TOBACCO CO., et al., Defendants.**

**The Southeastern Iron Workers Health Care Plan, Intervening Plaintiffs.**

**No. 00–2641–CIV.**

United States District Court, S.D. Florida.

Nov. 3, 2000.

Stanley Marvin Rosenblatt, Miami, FL, for Robert W. Angell, Raymond Lacey, Frozene D. Steevens, Frank Amodeo, Mary Farnan, Loren E. Lowery, Angie Della Vecchia, Michael Matyi.

Joseph Thompson Thornton, Lisa M. Berlow–Lehner, Thornton Davis & Fein, Miami, FL, for Southeastern Iron Workers Health Care Plan.

Diane G. Pulley, Jones Day Reavis & Pogue, Atlanta, GA, Ralph Benjamin Reid, Douglas Joseph Chumbley, Carlton Fields Ward Emmanuel Smith & Cutler, Miami, FL, for RJ Reynolds Tobacco Co.

Dan K. Webb, Winston & Strawn, Chicago, IL, Herbert M. Wachtell, Wachtell Lipton Rosen & Katz, New York, NY, for Philip Morris Inc.

Kenneth J. Reilly, Shook Hardy & Bacon, Miami, FL, David Lee Ross, Greenberg Traurig, Miami, FL, for Lorillard Tobacco Co.

Kenneth J. Reilly, Shook Hardy & Bacon, Miami, FL, David Lee Ross, Greenberg Traurig, Miami, FL, Dan K. Webb, Winston & Strawn, Chicago, IL, Diane G. Pulley, Jones Day Reavis & Pogue, Atlanta, GA, Ralph Benjamin Reid, Douglas Joseph Chumbley, Carlton Fields Ward Emmanuel Smith & Cutler, Miami, FL, for Lorillard, Inc.

William Patrick Geraghty, Shook Hardy & Bacon, Miami, FL, Anthony Nolan Upshaw, Adorno & Zeder, Miami, FL, for American Tobacco Co., Brown & Williamson Tobacco Corp.

Kelly Anne Luther, Clarke Silverglate Williams & Montgomery, Miami, FL, Aaron H. Marks, Kasowitz Benson Torres & Friedman, New York, NY, for Liggett Group, Inc.

Dan K. Webb, Winston & Strawn, Chicago, IL, Kelly Anne Luther, Clarke Silverglate Williams & Montgomery, Miami, FL, Aaron H. Marks, Kasowitz Benson Torres & Friedman, New York, NY, for Brooke Group Ltd. Inc.

Dan K. Webb, Winston & Strawn, Chicago, IL, Richard Thomas Woulfe, Bunnell Woulfe Kirschbaum Keller & McIntyre, Fort Lauderdale, FL, Jose E. Martinez, Martinez Gutierrez & Decordoba, Miami, FL, for Dosal Tobacco Corp., Tobacco Institute, Inc.

### OMNIBUS ORDER GRANTING MOTIONS TO REMAND

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon The Southeastern Iron Workers Health Care Plan's Motion for Remand, filed August 7, 2000, Class Motion to Remand to the Eleventh Judicial Circuit of Dade County, Florida, filed August 16, 2000, and

Defendants' Motion for Leave to File Supplemental Memorandum, filed September 8, 2000.

THE COURT has considered the Motions, the pertinent portions of the record and is otherwise fully advised in the premises. The Engle Class Plaintiffs and The Southeastern Iron Workers Healthcare Plan (the "Plan") file the instant remand motions arguing that this case should be remanded to the Eleventh Judicial Circuit of Dade County, Florida because Defendants' removal was procedurally defective and because federal subject matter jurisdiction is lacking. For the reasons discussed below, the motions will be granted and this case will be remanded.

## BACKGROUND

On May 10, 1994, nine named plaintiffs brought this class action on behalf of themselves and all Florida citizens and residents who have suffered or died from medical conditions caused by their addiction to nicotine-based cigarettes and their survivors (the "Engle Class").[1] After extensive pretrial proceedings and numerous appeals to the Florida appellate courts spanning almost four years, this case proceeded to trial in phases, pursuant to trial plans formulated by the Honorable Robert P. Kaye and the Honorable Alan Postman.

Phase I, the liability trial on common issues and entitlement to punitive damages, commenced on July 6, 1998 and concluded with verdicts in favor of the Engle Class on July 7, 1999. The first stage of Phase II, the trial on compensatory damages for certain class representatives, commenced on November 1, 1999 and concluded with verdicts in favor of three of the named plaintiffs on April 7, 2000. The second stage of Phase II, the trial on the amount of punitive damages, commenced in May 2000 and concluded on July 14, 2000 with verdicts totaling $145 billion in favor of the Engle Class.

Although the Phase II jury notified Judge Kaye that it had reached its punitive damages verdicts at about 2:30 P.M. on July 14, 2000, Judge Kaye publicly announced that he would defer publishing the verdicts until 3:00 P.M. Shortly before 3:00 P.M., the Plan filed its Motion to Intervene seeking permission to assert subrogation claims under Florida law on behalf of itself and similarly situated funds and insurers for reimbursement from damages recovered by any beneficiary or insured who is a member of the Engle Class. Based on the Plan's mere filing of the Motion to Intervene and before entry of the final judgment on the punitive damages award and a ruling on the Motion to Intervene, on July 24, 2000, Defendants removed the action to this Court. In their Notice of Removal, Defendants contend that removal was proper because the subrogation claims the Plan seeks to assert are actually brought under or, alternatively, "super-preempted" by ERISA.

## LEGAL ANALYSIS

The Engle Class and the Plan argue that this action, along with the Plan's Motion to Intervene, should be remanded to state court because removal was procedurally defective and the Court lacks subject matter jurisdiction. Additionally, the Engle Class argues that should the Court determine that removal was proper, the Court should decline to exercise supplemental jurisdiction over its pendent state law claims. The undersigned need not reach the arguments regarding subject matter jurisdiction and the propriety of exercising supplemental jurisdiction because removal of this action was procedurally defective.[2]

1. The action was originally brought on behalf of all United States citizens and residents who have suffered or died from medical conditions caused by their addiction to nicotine-based cigarettes and their survivors. However, on January 31, 1996, the Third District Court of

Appeal of Florida limited the class to Florida citizens and residents and their survivors.

2. As federal removal jurisdiction must be determined as of the date of filing of the removal petition and jurisdiction is currently lack-

## I. Procedural Defects

The Engle Class and the Plan point to three separate defects in support of their contention that remand is required. Specifically, they argue that: 1) Defendants failed to manifest unanimous consent to removal; 2) Defendants waived their right to remove by actively litigating in state court after learning that the Plan had filed its Motion to Intervene; and 3) removal was premature.

 28 U.S.C. § 1447 makes clear that a case may be remanded for any defect in removal procedure. *See* 28 U.S.C. § 1447(c); *Harris Corp. v. Kollsman, Inc.*, 97 F.Supp.2d 1148, 1151 (M.D.Fla.2000). In the event of a motion to remand on this basis, the removing party bears the burden of demonstrating that removal was proper. *See Harris Corp.*, 97 F.Supp.2d at 1151; *Delgado v. Shell Oil Co.*, 890 F.Supp. 1324, 1341 (S.D.Tex.1995). Moreover, "[b]ecause removal jurisdiction 'raises significant federalism concerns,' courts construe removal statutes 'narrowly, with doubts [and ambiguities] resolved in favor of remand to the state court.'" *Delgado*, 890 F.Supp. at 1341 (citations omitted).

With these principles in mind, the Court is unable to agree with the Plan and the Engle Class that all of the Defendants failed to manifest their consent to removal or that Defendants waived their right to remove. However, the Court agrees with the Plan and the Engle Class that removal was premature.

## A. Unanimity of Consent

 With respect to the unanimity of consent to removal, the Engle Class contends that removal was defective because each Defendant did not officially and unambiguously consent to the Notice of Removal. Supplement to Class Motion to Remand at 2. Although there is no express statutory requirement for joinder or consent by co-defendants, the Eleventh Circuit, along with numerous district courts agree that all named defendants must joint the removal petition for removal to be proper within the meaning of § 1447(c). *In re Ocean Marine Mut. Prot. and Indem. Ass'n., Ltd.*, 3 F.3d 353, 355–56 (11th Cir.1993); *Woods v. Firestone Tire & Rubber Co.*, 560 F.Supp. 588, 590 (S.D.Fla. 1983). This is commonly referred to as the "rule of unanimity." *Codapro Corp. v. Wilson*, 997 F.Supp. 322, 325 (E.D.N.Y. 1998). There is disagreement among the district courts, however, as to what constitutes joinder and what is required to effectuate consent.[3] *See Nathe v. Pottenberg*, 931 F.Supp. 822, 825 (M.D.Fla.1995) (stating "[t]o effect removal, each defendant must join in the removal by signing the notice of removal or by explicitly stating for itself its consent on the record, either orally or in writing, within the 30–day period prescribed in 28 U.S.C. § 1446(b)"); *Jasper v. Wal–Mart Stores*, 732 F.Supp. 104, 105 (M.D.Fla.1990) (noting "all defendants, served at the time of filing the petition, must join in the removal petition; the petition must be signed by all defen-

ing because the motion to intervene merely was pending when the removal petition was filed, *see Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1253 (11th Cir.1988); *Montgomery & Larmoyeux v. Philip Morris, Inc.*, 992 F.Supp. 1372, 1375 n. 1 (S.D.Fla.1998), the Court is disinclined at this time to resolve the complex issues of federal subject matter jurisdiction and supplemental jurisdiction raised by the pending motions. However, the undersigned recognizes that due to the operation of internal court rules and policies she eventually may be called upon to do so if and when the motion to intervene is granted and the case again removed to federal court.

3. There are few circuit court cases addressing this matter given that 28 U.S.C. § 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." *In re Ocean Marine Mut. Prot. and Indem. Ass'n*, 3 F.3d 353, 355 (11th Cir.1993) (ruling that "a remand order based on a timely § 1447(c) motion to remand for defects in removal procedure is unreviewable pursuant to § 1447(d)").

dants or the signer must allege consent of all defendants"); *Crawford v. Fargo Mfg. Co.*, 341 F.Supp. 762, 763 (M.D.Fla.1972) (noting "[t]here is authority to the effect that all defendants need not sign the original removal petition ... [h]owever, it is clear that all defendants who have been served must join in the petition for removal") (citations omitted). Although the formulations vary, it is apparent from the case law that as long as the record reflects that all the defendants have taken binding action manifesting their consent, courts have found present the requisite joinder and consent. *See Getty Oil Corp. v. Insurance Co. of N.A.*, 841 F.2d 1254, 1262 n. 11 (5th Cir.1988).

██ After reviewing the relevant case law, this Court finds that even though all Defendants did not personally sign the Notice of Removal ("Notice"), unanimous joinder was nonetheless apparent based on the binding actions taken by Defendants. Specifically, the first sentence of the Notice stated that it was jointly filed by all Defendants. *See* Notice of Removal at 1. In addition, the Notice explained that "[e]ach defendant joining herein has decided to join in this single Notice of Removal in order to avoid a multiplicity of notices of removal.... Certain defendants are represented by separate counsel and reserve the right to assert independent interests as to any issue or matter, including with respect to any issues or matters related to the above-captioned action. By joining in this single notice of removal, no defendant authorizes any other party to act on its behalf as to any matter or issue relating to the above-captioned action." *Id.* at 2 n. 1. Furthermore, the Notice was signed by Dan K. Webb, counsel for Philip Morris Inc. "on behalf of all Defendants for purposes of removal only." *Id.* at 8. Moreover, this Court finds that all the Defendants expressed their consent to removal by appearing before the undersigned at the August 8, 2000 Status Conference where the parties discussed the briefing schedule on the motions to remand. At this conference, Mr. Webb acknowledged that he spoke on behalf of the other Defendants and indicated that Defendants had agreed to file a single response to both motions to remand. Transcript of Aug. 8, 2000 Status Conference at 5, filed Aug. 16, 2000. Accordingly, based on the Defendants' statements of joinder in the Notice of Removal, coupled with the appearance of all the Defendants at the Status Conference before the undersigned, this Court finds that all Defendants sufficiently joined in and consented to removal.

### B. Waiver of the Right to Remove

██ The Engle Class next argues that Defendants waived their right to remove under federal law by actively litigating in state court after the Plan filed its Motion to Intervene. Suppl. to Class Motion to Remand at 3–4. A defendant waives its right to remove to federal court, after it is apparent that the case is removable, by taking "clear and unequivocal" actions in state court that manifest its intent to have the matter adjudicated there. *See Estate of Krasnow v. Texaco, Inc.*, 773 F.Supp. 806, 809 (E.D.Va.1991); *Chicago Title & Trust Co. v. Whitney Stores, Inc.*, 583 F.Supp. 575, 576–77 (N.D.Ill.1984); *Baldwin v. Perdue, Inc.*, 451 F.Supp. 373, 375–76 (E.D.Va.1978). In general, the right of removal is waived when the defendant seeks affirmative relief, recovery or an adjudication on the merits in the state court. *Baldwin*, 451 F.Supp. at 375. However, where the defendant takes action which is defensive in nature, such as to avoid automatic entry of judgment against it or to preserve the status quo in state court, such action does not manifest an intent to litigate in state court and accordingly does not waive the defendant's right to remove. *See RTC v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir.1994); *Scholz v. RDV Sports, Inc.*, 821 F.Supp. 1469, 1470–71 (M.D.Fla.1993).

██ Applying these principles, this Court finds that Defendants did not waive their right to remove when, on July 17,

2000, they resubmitted to the state court forty-eight pending motions on which the court had deferred ruling and requested a postponement of the entry of final judgment. Suppl. to Class Motion to Remand at 3. Notwithstanding the Engle Class's assertions, Mr. Webb attests that he was not aware of the Plan's Motion to Intervene when he appeared in state court on the morning of July 17 and did not see the motion until after Judge Kaye's status conference. Decl. Dan K. Webb ¶¶ 4–6. Based on Mr. Webb's declaration, and without evidence to the contrary, the Court finds that because it was not apparent to Defendants that the case was removable until after the July 17 status conference, Defendants' actions at the status conference did not waive their right to remove.

■ The Court next decides whether Defendants indicated an *intent* to "clearly and unequivocally" waive their right to remove on July 24, 2000 when they filed their post-trial motions and then filed the Notice of Removal moments later, effectively stripping the state court of jurisdiction. Suppl. to Class Motion to Remand at 3. The Engle Class contends that each of the numerous post-trial motions filed by Defendants sought affirmative relief from the jury verdict of July 14 and constituted a waiver of any right to removal. *Id.* at 4. After considering the case law and the logical inferences of Defendants' actions, this Court cannot agree. According to the Florida Rules of Civil Procedure, Defendants had until July 24, 2000, ten days after the announcement of the punitive damages verdict, to file post-trial motions.[4] Thus, Defendants most likely filed their post-trial motions within the ten day deadline to protect their rights in state court, not to seek affirmative relief. *See Somoano v. Ryder Sys., Inc.*, 985 F.Supp. 1476, 1478 (S.D.Fla.1998) (finding a defendant

whose sole action in the state court is filing a motion to dismiss prior to petitioning for removal did not indicate an intent to waive his rights to remove because the "Florida Rules of Civil Procedure cannot operate to shorten the time period within which to remove a state court Complaint to federal court, and a defendant should not be required to file a motion for extension of time in state court merely to observe both courts' procedural requirements"). Accordingly, the circumstances indicate that Defendants were protecting their rights in state court and the undersigned therefore finds that the Defendants' filings did not constitute a waiver of their right to remove.

## C. Prematurity of Removal

■ 28 U.S.C. § 1446(b) requires a defendant to file a notice of removal within thirty days after receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable," if the case is one that was not removable when initially filed. 28 U.S.C. § 1446(b). Defendants contend that the Plan's Motion to Intervene triggered its right to remove under § 1446(b). After careful consideration of the arguments, the relevant case law and the policies underlying the removal statutes, the Court is unpersuaded that Defendants have demonstrated that the nonparty Plan's Motion to Intervene constitutes a "motion" within the meaning of § 1446(b). In reaching this conclusion, the Court has considered the cases cited by Defendants but finds them distinguishable from the instant case.

In finding them distinguishable, the Court agrees with Defendants that when determining the propriety of removal under the "motion" portion of § 1446(b), the ultimate disposition of the motion is irrele-

---

**4.** Defendants had ten days after the announcement of the verdict to file post-verdict motions to interview a juror pursuant to Fla. R.Civ.P. 1.431(h), to set aside the verdict and any judgment thereon and to enter judgment

in accordance with the motion for a directed verdict according to Fla.R.Civ.P. 1.480(b), and to file a motion for a new trial under Fla.R.Civ.P. 1.530(b).

vant. Rather, as a thorough reading of the relevant case law reveals, the litigation status of the movant, as well as the content of the motion, informs the analysis of whether the motion discloses that "the case is one which is or has become removable," thereby triggering the right to remove. 28 U.S.C. § 1446(b) (emphasis added). *See Harriman v. Liberian Maritime Corp.,* 204 F.Supp. 205, 206–07 (D.Mass. 1962) ("Congress did not condition the running of the [removal] period upon receipt by defendant of knowledge that a motion had been allowed but, rather, on the receipt by defendant of a document which would bring home to that defendant the fact that plaintiff had changed his claim....").

In this regard, the Court notes that in all but a few of the cases relied on by Defendants, it was a party's motion that triggered the right to remove under § 1446(b), and more specifically, a *plaintiff's* motion. *See, e.g., Yarnevic v. Brink's, Inc.,* 102 F.3d 753, 754–55 (4th Cir.1996) (finding that statement in *plaintiff's* memorandum in support of motion to remand revealed the parties' diverse status and thus diversity jurisdiction); *Pease v. Medtronic,* 6 F.Supp.2d 1354, 1358 (S.D.Fla.1998) (finding that *plaintiff's* motion to amend to add punitive damages claim disclosing satisfaction of the amount in controversy was sufficient to trigger right to remove); *Neal v. Trugreen Ltd. P'ship,* 886 F.Supp. 527, 528 (D.Md.1995) (finding that *plaintiff's* motion to dismiss counterclaim stating that a federal claim would be added commenced § 1446(b)'s time period). Further, in each of the cases, the motion disclosed an intent to change the claim actually before the court and constituted an admission binding on the plaintiff. *See, e.g., United States v. Randall,* 976 F.Supp. 1442, 1445 (M.D.Ala. 1997) (noting that government's response to Rule 41(e) motion was a judicial admission sufficient to divest the court of authority to grant the motion). Thus, the motion supplied the removing party with the necessary information from which fed-

eral removal jurisdiction could be clearly ascertained. 28 U.S.C. § 1446(b). *See Richstone v. Chubb Colonial Life Ins.,* 988 F.Supp. 401, 403 (S.D.N.Y.1997) (defendants should not have to guess as to an action's removability).

In contrast, a nonparty's motion, such as the Plan's Motion to Intervene in this case, might never be granted and, until allowed, has no effect on the nature of the claims actually before the state court. *See Delgado,* 890 F.Supp. at 1343–46 (finding removal premature where putative third-party defendant removed before leave was granted to serve a third-party complaint and formally make putative third-party defendant a party). As such, a motion of this character at most demonstrates a potential for removability and, therefore, is not a "motion" within the plain meaning of 28 U.S.C. § 1446(b), that is, "a motion ... from which it may be first ascertained that the case is one which *is* or *has become* removable...." 28 U.S.C. § 1446(b) (emphasis added). This construction of the term "motion" as employed in 28 U.S.C. § 1446(b) avoids the undesirable result of licensing defendants to disrupt the orderly processing of cases in state courts and clutter the federal courts with cases over which they ultimately might have no jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) ("The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted only by Congress.... 'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined.'") (quoting *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934)). It is also consistent with the numerous cases cautioning that the removal statutes are to be narrowly construed and doubts and ambiguities resolved in favor of remand. *See, e.g., University of South Alabama v. The*

*American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999); *Harris Corp.*, 97 F.Supp.2d at 1151.

In reaching the conclusion that a non-party's mere motion to intervene cannot furnish a basis for removal pursuant to 28 U.S.C. § 1446(b), the Court acknowledges that in the remaining cases relied on by Defendants the removals were effected after motions to intervene were filed. However, the facts of these cases either are inapposite and therefore unpersuasive or actually support the conclusion that a non-party's motion to intervene is insufficient under the relevant statute. *See Irving Trust Co. v. Century Export & Import, S.A.*, 464 F.Supp. 1232 (S.D.N.Y.1979); *FDIC v. Loyd*, 955 F.2d 316 (5th Cir.1992); and *FDIC v. Brooks*, 652 F.Supp. 744 (N.D.Tex.1985).

Specifically, contrary to Defendants' assertion, the *Irving Trust* court did not find that the motion to intervene triggered the right to remove, instead, the court found that the alleged basis for removal, i.e. "a separate and independent claim, which would be removable if sued upon alone" as provided for in 28 U.S.C. § 1441(c), would have been apparent first from the complaint when it was filed, but that the latest date by which the intervenor, who was also the removing party, could have become aware of the basis for removal in the complaint was the date he moved to intervene and amend or strike the answer that had been filed on his behalf. *See Irving Trust*, 464 F.Supp. at 1239. As more than thirty days had elapsed from the latest date that the intervenor could have learned that *the complaint* contained the alleged basis for removal, the court found that his removal was untimely pursuant to 28 U.S.C. § 1446(b). Thus, *Irving Trust* does not

stand for the proposition that a nonparty's motion to intervene can furnish the basis for federal removal jurisdiction.

In *Loyd* and *Brooks*, removal was based on 12 U.S.C. § 1819, which provides removal jurisdiction in any civil suit in which the FDIC is a party. *See Loyd*, 955 F.2d at 323–24; *Brooks*, 652 F.Supp. at 744; 12 U.S.C. § 1819(b)(2)(A), (B). In both cases, prior to intervening, the FDIC had been appointed receiver of the defunct party banks and, as the *Brooks* court explained, was therefore a party for purposes of removal under § 1819 on the date it intervened. *See Brooks*, 652 F.Supp. at 745. *See also Loyd*, 955 F.2d at 326–27 (noting its prior authority that the FDIC may enjoy the status of a party before it formally becomes a party and, in effort to be consistent with that authority, holding that the FDIC becomes a party for purposes of § 1446 on the date it makes some appearance in the state court action). Defendants have failed to offer any persuasive authority that the motion to intervene of a nonparty such as the Plan should be accorded similar effect, particularly where, as here, the interests of the Engle Class and the Plan have not been shown to be fully aligned. *See* 12 U.S.C. § 1819(b) (providing, *inter alia*, federal jurisdiction over civil suits in which FDIC is a party and a right to appeal any order of remand). *Cf. Loyd*, 955 F.2d at 326 (observing that "[c]ommon sense and the practicalities of pleading dictate that no nonparty to a state court proceeding has a mature right to remove that proceeding to federal court").[5]

In sum, in the absence of persuasive authority to the contrary, the Court declines to construe the reference to "mo-

---

5. Defendants also cite to *Baker v. National Boulevard Bank of Chicago*, 399 F.Supp. 1021 (N.D.Ill.1975). While Defendants are correct that the *Baker* court stated that the action became removable "when Barnett filed its motion to intervene on March 20, 1975," it is also clear from the opinion that the state

court granted the motion to intervene on the day it was filed and that Barnett thereafter removed the case to federal court. *Id.* at 1022–23. In this case, had the state court granted the Plan's Motion to Intervene before Defendants effected the removal, the removal would not be procedurally defective.

**1364**

tion" in 28 U.S.C. § 1446(b) as including the Plan's Motion to Intervene.[6]

## II. Request for Attorneys' Fees

■ As a final matter the Court has carefully considered but declines to grant the Engle Class's and the Plan's request for the attorneys' fees incurred in seeking a remand of this action. To the extent the Engle Class and the Plan seek attorneys' fees pursuant to Fed.R.Civ.P. 11, the Court is unpersuaded that removal was sought for any improper purpose, that the existing law concerning removal under the "motion" portion of § 1446(b) was such that Defendants' removal was unwarranted or frivolous or that removal was otherwise violative of Rule 11. *See* Fed.R.Civ.P. 11(b). To the extent the Engle Class and the Plan seek attorneys' fees pursuant to § 1447(c), the Court is similarly unpersuaded that removal was undertaken in bad faith or that Defendants acted unreasonably based on the state of the law at the time of removal. *See, e.g., Cowan v. Combined Ins. Co. of America,* 67 F.Supp.2d 1312, 1320–21 (M.D.Ala.1999). Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion for Leave to File Supplemental Memorandum is GRANTED. It is further

ORDERED AND ADJUDGED that The Southeastern Iron Workers Health Care Plan's Motion to Remand and the Class Motion to Remand to the Eleventh Judicial Circuit of Dade County, Florida are GRANTED to the extent they seek remand of this case to state court and DENIED to the extent they seek an award of attorneys' fees. Accordingly, it is further

ORDERED AND ADJUDGED that this case is REMANDED to the Eleventh

Judicial Circuit Court, in and for Dade County, Florida.

---

**6.** On October 30, 2000, Defendants filed a Notice of Additional Authority. To the extent the additional authority concerned the issues addressed herein, the Court considered the cases and finds that they do not require a contrary conclusion.